UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRENDA SWEETLAND, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| WHEELABRATOR SAUGUS, INC., | ) ) ) |
| Defendant. | ) ) ) |

## CLASS ACTION COMPLAINT AND JURY DEMAND

## INTRODUCTION

1. Plaintiff, BRENDA SWEETLAND, and a putative class of her neighbors, bring this class action against Defendant WHEELABRATOR SAUGUS, INC. (hereinafter, "Defendant") because of frequent, widespread, and recurrent noxious odors, air particulates, and fugitive dust emissions from a "waste-to-energy" facility into neighboring private properties.

2. Defendant operates the Wheelabrator trash incinerator, landfill, and "waste to energy" facility (hereinafter, the "Facility") located at 100 Salem Turnpike, Essex County, Saugus, Massachusetts, which releases noxious odors, air particulates, and fugitive dust onto Plaintiff's property causing property damage through nuisance, negligence, gross negligence, and trespass.

## PARTIES

3. At all times relevant hereto, Plaintiff Brenda Sweetland resides at 17 Dudley St., Saugus, MA 01906. Plaintiff is a citizen of the Commonwealth of Massachusetts.

4. Defendant Wheelabrator Saugus, Inc. is a foreign corporation, organized under the laws of Delaware with its principal place of business in Portsmouth, New Hampshire.

1

5. Defendant's corporate activities are directed, controlled, and coordinated from its headquarters in New Hampshire.

6. Defendant's registered agent is C T Corporation System, and can accept service at 155 Federal Street, Suite 700, Boston, Massachusetts 02110.

7. Defendant, including its predecessors and agents, either constructed or directed the construction of the landfill and exercised control and ownership over the landfill at all relevant times hereto.

8. Upon information and belief, Defendant and its agents have, at all times relevant hereto, operated and maintained the Facility located at 100 Salem Turnpike, Essex County, Saugus, Massachusetts 01906.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs. Additionally, Class Members are citizens of a state different from Defendant.

10. Venue is proper in this Court under 28 U.S.C. 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiff's claims took place in this District, and because much, if not all, of the property that is the subject of this action is situated in this District.

11. Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1).

**GENERAL ALLEGATIONS**

12. Defendant owns and operates a commercial municipal waste incinerator, landfill, and "waste-to-energy" Facility in Essex County.

13. Defendant's Facility accepts and processes up to 1,500 tons of municipal waste per day, which it burns in a Municipal Waste Combustor (an "incinerator") for the production of electricity.

14. The Facility receives and stores substantial quantities of waste at its Facility, which Defendant processes into refuse-derived fuel. Materials deposited in the Facility include municipal solid waste from households and businesses.

15. Defendant's incinerator is comprised of two water wall boilers designed to generate steam at a rate of 195,000 pounds per hour. The steam is then directed to a turbine generator for the production of electricity.

16. At the facility, the waste-to-energy process starts with incoming truck deliveries to an enclosed reception area where municipal solid waste is then unloaded into storage pits.

17. After burning the municipal waste in Defendant's incinerator, Defendant then disposes of the resulting byproduct, ash, by dumping the incinerator's ash into the property's on-site landfill.

18. The materials deposited into Defendant's Facility decompose and generate byproducts, which has an odorous and offensive smell of decomposition which generally consists of hydrogen sulfide, methane, carbon dioxide, and various other compounds.

19. The raw materials and chemicals utilized by Defendant are noxious and highly odiferous, and its processing operations create a foreseeable risk that noxious odor emissions, air

particulates, and fugitive dust could be emitted into surrounding residential communities if reasonable steps are not taken to mitigate and control them.

20. A properly operated, maintained, and/or constructed Facility such as Defendant's will not emit noxious odors, air particulates, or fugitive dust into the surrounding residential areas.

21. Defendant's emission control processes are inadequate and improperly maintained and operated and fail to prevent noxious offsite odors, air particulates, and fugitive dust from invading nearby private, residential properties.

22. Defendant has failed to properly construct, operate, and maintain its Facility to prevent causing offensive offsite odor, air particulates, and fugitive dust impacts, despite knowledge that their Facility has repeatedly emitted noxious fugitive emissions into the ambient air.

23. Defendant's Facility is surrounded by residential properties.

24. On frequent, recurrent, and intermittent occasions too numerous to list individually, Plaintiff's property including Plaintiff's neighborhood, residence, and outdoor spaces have been and continue to be physically invaded by noxious odors, air particulates, and fugitive dust (hereinafter, "air contaminants").

25. The noxious odors, air particulates, and fugitive dust which entered Plaintiff's property originated from, and were caused by, Defendant's Facility.

26. Defendant's Facility and its noxious emissions have been the subject of frequent complaints from residents in the nearby residential area.

27. More than 35 area residents have submitted written statements to Plaintiff's counsel detailing the impact Defendant's odorous and contaminant emissions have had on their lives and their ability to use and enjoy their homes and properties.

28. Plaintiff Brenda Sweetland reported to Plaintiff's Counsel that as a result of Defendant's odorous and contaminant emissions, she "get[s] a film in my pool and my filter get clogged so easily. The smell of plastic burning is nasty that you can't sit outside or leave windows open." She further reported that her home "is always dusty."

29. Below is a very small sampling of the factual allegations made by putative class members to Plaintiff's Counsel, demonstrating that Defendant's facility is the source and cause of the odor and air pollutant emissions, which have damaged their neighboring private residential properties within the Class Area.

   a. On February 12, 2021, putative class member Penny Morico reported, "[m]y home is very dusty and also sometimes [we] cannot open windows due to smell."

   b. On February 15, 2021, putative class member Robert Falasch reported that "we get odors that… we believe are coming from the incinerator year round. It stops us from enjoying our pool at various times of the day and even in the winter we get odors with our windows [and] doors closed."

   c. On February 16, 2021, putative class member Anna Triolo reported, "I am not able to open my windows year round due to the odor and dust. Before I realized this my walls were black as if a smoker lived in my house, we do not have any smokers in my home. My windows are always covered with a large amount of black dust."

   d. On February 22, 2021, putative class member Kathleen Frongillo reported "[I] am unable to occupy/use my backyard due to smog, noise level of incinerator and smell is unbearable at times. [I'm] unable to open windows to allow passage of fresh air."

30. Defendant's well documented pattern of failing to control its emissions is demonstrated by the following:

   a. At an October 15, 2019 public hearing, community residents, elected officials, and environmental advocates petitioned the Massachusetts Department of Environmental Protection ("MassDEP") to hold Defendant accountable for its noxious emissions. Numerous individuals spoke at the public hearing, challenging Defendant's emissions. State Rep. RoseLee Vincent, D-Revere, who represents constituents in Saugus and Revere who are closest to the Wheelabrator Saugus trash-to-energy plant, stated, "the Saugus incinerator will be emitting a much higher and more dangerous level of nitrogen oxides than every other incinerator in the state! How can this be right?"

5

    b. In February of 2020, State Representative RoseLee Vincent strongly criticized the Massachusetts Department of Environmental Protection for failing "its core mission to protect the people with a modified emission control plan." Representative Vincent reported that she was "deeply, deeply disturbed, and quite frankly outraged, that MassDEP is once again failing to protect the people of my district as they always do when it comes to this dinosaur of an incinerator." Vincent expressed personal outrage as well as complaints from her constituents over MassDEP's allowance of Wheelabrator to purchase emission reduction credits, rather than comply with "today's regulatory standards." "So, essentially, Wheelabrator Saugus can discharge higher than acceptable emissions into the air that we breathe, as long as they are paying for these so-called credits. This is reprehensible and beyond unacceptable."

    c. On several occasions, the Facility's incinerator systems malfunctioned, and Defendant vented high-pressure gases into the open air. For days or weeks at time, surrounding communities were subjected to unrelenting noise which was compared to the noise of a plane flying overhead. In July of 2019, the Massachusetts Board of Health cited Defendant for three violations of "elevated noise levels" as a result of relentless and debilitating" noise emissions that were in violation of "several state and local statutes and regulations."

    d. Several citizen Facebook groups with over 800 members entitled "Saugus MA and Revere MA Residents Opposed to Wheelabrator Ash Expansion" and "Wheelabrator opposition group."

    e. Numerous media reports regarding Defendant's "miserable" foul odors and emission of dust particulates.

31. Defendant, its predecessors, and/or its agents either constructed or directed the construction of the facility and Defendant exercises control and ownership over the Facility.

32. Despite clear knowledge of its odor and contaminant emission problem, Defendant repeatedly continued to frequently emit severe fugitive off-side noxious odors and contaminants into the ambient air outside its property.

33. The foul odors and contaminants emitted from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities and have caused physical property damages.

34. Defendant's odors and air contaminants have caused substantial and unreasonable interferences with Plaintiff's use and enjoyment of private property.

35. Plaintiff's property has been and continues to be physically invaded by noxious odors and air contaminants that have interfered with the use and enjoyment of that property, resulting in damages.

36. The invasion of Plaintiff's property and that of the Class by noxious odors and air contaminants has deprived Plaintiff of the full value of her property and/or reduced the value of that property, resulting in damages.

37. The Class Area and Essex County are home to a wide range of commercial and recreational activities including but not limited to dining, industry, construction, retail trade, parks, and education.

38. Plaintiff and the Class are a limited subset of individuals in Essex County and the Class Area that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition. Plaintiff and the putative class are not coterminous with the general public.

39. Members of the public in the Class Area and Essex County, including but not limited to businesses, employees, commuters, tourists, visitors, minors, customers, clients, and students, have experienced and been harmed by the fugitive noxious odors and air contaminants emitted from the Facility into public spaces; however, unlike Plaintiff and the Class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of diminished private property values, deprivation of the full value of Plaintiff's private property, and/or loss of use and enjoyment of their private property.

40. Plaintiff and the Class have suffered damages different in kind that are not suffered by the public at large because their injury is an injury to private property.

41. The odors and air contaminants caused by Defendant's Facility have been and continue to be dispersed across public and private land throughout the Class Area.

42. Defendant negligently, knowingly, intentionally, and recklessly failed to properly design, operate, repair, and/or maintain the Facility and its associated operations, thereby causing the unreasonable invasion of Plaintiff's property by noxious odors and air contaminants on unusually severe, frequent, intermittent, and ongoing recurring occasions.

## CLASS ALLEGATIONS

A. **Definition of the Class**

43. Plaintiff brings this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Massachusetts Rule of Civil Procedure 23. Plaintiff seeks to represent a Class of persons preliminarily defined as:

> *All owner/occupants and renters of residential property residing within one and one half (1.5) miles of the Facility's property boundary.*

The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiff reserves the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

44. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23 of the Federal Rules of Civil Procedure in that:

    a.    the class is so numerous that joinder of all members is impracticable;

    b.    there are questions of law or fact common to the class;

    c.    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    d.    the representative parties will fairly and adequately protect the interests of the class.

    e.    There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

    f.    Questions of law and fact such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

    g.    The claims of the representative parties are typical of the claims of the Class;

    h.    A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    i.    The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

    j.    There are no unusual difficulties foreseen in the management of this class action; and

    k.    Plaintiff, whose claim is typical of those of the Class, through her experienced counsel, will zealously and adequately represent the Class.

**l. Numerosity**

45.    The approximate number of residential households within the Class Area is over 10,000.

46.    The Class consists of tens of thousands of members and therefore is so numerous that joinder is impracticable.

**m. Commonality**

47.    Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

    a.    whether and how Defendant negligently, knowingly, intentionally, recklessly, and grossly failed to design, operate, and maintain the Facility and its operations;

    b.    whether Defendant owed any duties to Plaintiff;

    c.    which duties Defendant owed to Plaintiff;

    d. which steps Defendant has and has not taken in order to control the emission of noxious odors and air contaminants through the construction, design, operation, and maintenance of its Facility and its respective operations;

    e. whether Defendant met its standard of care with respect to its construction, operation, design, and maintenance of the Facility and its operations;

    f. whether and to what extent the Facility's noxious odors and air contaminants were dispersed over the Class Area;

    g. whether it was reasonably foreseeable that Defendant's failure to properly construct, design, operate, and maintain the Facility and its operations would result in an invasion of Plaintiff's property interests;

    h. whether the degree of harm suffered by Plaintiff and the Class constitutes a substantial annoyance or interference; and

    i. the proper measure of damages incurred by Plaintiff and the Class.

  **n. Typicality**

48. Plaintiff has the same interests in this matter as all the other members of the Class and her claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

49. The claims of Plaintiff and the other Class Members have a common cause and their damages are of the same type. The damages of Plaintiffs and the Class are different in kind than those suffered by other members of the broader community who do not hold private residential property interests. The claims originate from the same failure of the Defendant to properly design, operate, and maintain the Facility and its operations.

50. All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors and air contaminants, causing damage to their property.

### o. Adequacy of Representation

51. Plaintiff's claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiff as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class and does not have interests adverse to the Class.

52. Plaintiff has retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from invasions of noxious industrial emissions. Plaintiff's Counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiff and all absent Class Members.

### p. Class Treatment Is the Superior Method of Adjudication

53. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

    a. Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

    b. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

    c. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

    d. The proposed class action is manageable.

54. The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and (ii) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

55. Notice can be provided to members of the Class by U.S. Mail and/or publication.

## I.   CAUSE OF ACTION ONE

### NUISANCE

56. Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

57. Plaintiff utilized her property as a residence and resides within the Class Area.

58. The noxious odors and dust which entered Plaintiff's property originated from Defendant's Facility.

59. By failing to reasonably construct, design, operate, repair, and maintain its Facility, Defendant has caused an invasion of Plaintiff's property by noxious odors and air contaminants on unusually frequent occasions that are too numerous to individually list herein.

60. The noxious fumes, odors, and air contaminants invading Plaintiff's property are indecent and offensive to Plaintiff, and indecent and offensive to individuals with ordinary sensibilities and obstruct the free use of Plaintiff's property so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

61. Defendant knew that it was emitting noxious odors and air contaminants onto neighboring properties, yet failed to take reasonably adequate steps to abate the nuisance.

62. Defendant owed and continues to owe a duty to the public to prevent and abate the interference with, and the invasion of, the free use and enjoyment of public spaces by emitting noxious pollutants, air contaminants, and odors into the ambient air.

63. Defendant owed and continues to owe a duty to Plaintiff and the Class to prevent and abate the interference with, and the invasion of, their private interests.

64. As a foreseeable, direct and proximate result of the foregoing conduct of Defendant, Plaintiff suffered damages to her property as alleged herein.

65. By causing noxious odors and air contaminants that physically invaded Plaintiff's property, Defendant created a nuisance which substantially and unreasonably impaired Plaintiff's use and enjoyment of her property on unusually frequent occasions too numerous to mention individually.

66. Such substantial and unreasonable interference includes, but is not limited to:

   a. loss of use and ability to enjoy the outside areas of Plaintiff's property or to open windows due to the presence of noxious odors;

   b. decrease in the value of Plaintiff's property; and

   c. annoyance, inconvenience, and unreasonable discomfort, including but not limited to the inability to engage in normal activities on the property and invite guests to Plaintiff's residence due to the embarrassment and annoyance of the noxious odors and dust invading Plaintiff's property.

67. Apart from the property damage incurred by Plaintiff and the Class, Defendant's emissions have substantially interfered with rights common to the general public, including the right to uncontaminated and/or unpolluted air.

68. Plaintiff suffered and continues to suffer special harm relating to the use and enjoyment of her land and property, and decreased property values—damages of a different kind that are additional to and separate from those suffered by the public at-large.

69. Plaintiff did not consent to noxious odors or air contaminants entering upon her property.

70. Whatever social utility provided by the Facility is clearly outweighed by the harm suffered by Plaintiff and the putative class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the value of their properties.

71. Defendant's substantial and unreasonable interferences with Plaintiff's property rights constitute a nuisance for which Defendant is liable to Plaintiff for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

## II.   CAUSES OF ACTION TWO AND THREE
## NEGLIGENCE AND GROSS NEGLIGENCE

72. Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

73. On occasions too numerous to mention, Defendant negligently and improperly constructed, designed, operated, repaired, and/or maintained its Facility and its operations, causing fugitive emissions to escape into the ambient air and invade Plaintiff's home, land, and property.

74. Defendant owed Plaintiff, as neighboring landowners, a duty of care with regard to its operation and maintenance of the Facility.

75. As a direct, proximate, and foreseeable result of Defendant's negligence in operating and maintaining the Facility, Plaintiff's property, on occasions too numerous to mention, was physically invaded by noxious odors and air contaminants.

76. As a further direct, proximate, and foreseeable result of the foregoing conduct of Defendant, Plaintiff suffered damages to her property as alleged herein. Such damages include, but are not limited to, the loss of use and enjoyment of Plaintiff's property, diminution in the value of Plaintiff's property, and annoyance, inconvenience, and unreasonable discomfort.

77. By failing to properly construct, design, operate, and/or maintain its Facility, Defendant failed to exercise its duty of ordinary care and diligence so that noxious odors and air contaminants would not invade Plaintiff's property.

78. By failing to construct, design, maintain, and/or operate its Facility, Defendant has caused the invasion of Plaintiff's property by noxious odors and air contaminants.

79. Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly constructed, designed, maintained, and/or operated its Facility and knew or should have known upon reasonable inspection that such actions would—and did—cause Plaintiff's property to be invaded by noxious odors and air contaminants.

80. As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiff's residence has been and continues to be physically invaded by noxious odors and air contaminants.

81. After learning about its noxious emissions, Defendant failed to take reasonably adequate steps to abate the conditions causing damages to Plaintiff's property.

82. Defendant's conduct in knowingly allowing conditions to exist, which caused noxious odors and air contaminants to physically invade Plaintiff's property demonstrates a conscious disregard for Plaintiff's rights.

83. There was a great probability that substantial harm would result from Defendant's acts and omissions that led to the inadequate construction, design, operation and maintenance of the Facility.

84. Defendant's negligence was willful and made with a conscious disregard for the rights and safety of Plaintiff and the putative class.

### III.  CAUSE OF ACTION FOUR

### TRESPASS

85. Plaintiff incorporates by reference as if fully set forth herein each and every allegation in the Complaint.

86. Defendant negligently failed to maintain and/or operate the Facility and its concomitant waste disposal obligations and processes, which caused noxious odors and air contaminants to be emitted from Defendant's property.

87. The noxious odors and air contaminants set in motion by Defendant's industrial operations physically invaded and entered Plaintiff's property and the airspace above the property on occasions too numerous to identify independently.

88. Plaintiff did not consent to the physical invasion of her property and its airspace by noxious odors or air contaminants.

89. It was reasonably foreseeable that Defendant's failure to properly maintain and/or operate the Facility would result in the invasion of neighboring property, including Plaintiff's.

90. The noxious odors and air contaminants that entered, and continue to enter, Plaintiff's property interfere with Plaintiff's interests in the exclusive possession, use, and enjoyment of the property.

91. Defendant's noxious odors and air contaminants have caused actual and substantial damage to the property and the airspace above, including an interference with Plaintiff's use and enjoyment of her property.

92. The noxious odors emitted by Defendant also caused Plaintiff harm through a diminution in the value of her property.

93. Defendant's actions resulting in the trespass upon Plaintiff's land and/or the airspace above were and continue to be wrongful, negligent, knowing, intentional, and made with a conscious disregard for the rights of Plaintiff and the harm caused thereto, entitling Plaintiff to compensatory and punitive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

A. Certification of the proposed Class pursuant to Federal Rules of Civil Procedure 23;

B. Designation of Plaintiff as representative of the proposed Class and designation of her counsel as Class Counsel;

C. Judgment in favor of Plaintiff and the Class Members and against Defendant;

D. An Order holding that entrance of the aforementioned noxious odors and air contaminants upon Plaintiff's property constituted a nuisance;

E.  An Order holding that Defendant was negligent in its construction, design, operation, and maintenance of the Facility.

F.  An award, to Plaintiff and the Class, of compensatory and punitive damages and attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon;

G.  An award to Plaintiff and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations; and

H.  Such further relief both general and specific as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues raised in this Complaint.

Dated: May 8, 2021                    Respectfully submitted,

*s/ William P. Doyle, III*
William P. Doyle, III (#556999)
COLONNA & DOYLE
26 Main Street, 3rd Floor
Lynnfield, MA 01940
Tel: (781) 245-1127 | Fax: (781) 245-1148
bill@colonna-doyle.com

Steven D. Liddle*
Laura L. Sheets*
Albert Asciutto*
*Pro Hac Vice Motions to be Submitted*
**LIDDLE & DUBIN PC**
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015/Fax: (313) 392-0025
sliddle@ldclassaction.com
lsheets@ldclassaction.com
aasciutto@ldclassaction.com

*Attorneys for Plaintiff and the putative Class*